UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| RAYMOND CALHOUN | : | |
| | : | Case No. 3:10cv180 (VLB) |
| v. | : | |
| | : | March 28, 2012 |
| RICHARD BLUMENTHAL, ET AL. | : | |

## RULING GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

The plaintiff Raymond Calhoun, was confined at Bridgeport Correctional Center ("Bridgeport Correctional") in Bridgeport, Connecticut, when he commenced this civil rights action *pro se* pursuant to 28 U.S.C. § 1915.  The plaintiff alleges *inter alia* that defendants Medical Services Administrator Daniel Bannish, Dr. James O'Halloran, Medical Manager Rikel Lightner, Nursing Supervisor Ann Marie Deeb[1], Medical Services Coordinator Nathan Hein and Warden Walter Ford were deliberately indifferent to his medical needs from September 17, 2009 to December 9, 2009.   On October 20, 2010, the court dismissed the claims for damages against all defendants in their official capacities and concluded that the claims of deliberate indifference to medical needs would proceed against the defendants in their individual capacities.

The plaintiff's current address on file is the Boston Pre-Release Center, 430 Canterbury Street, Roslindale, Massachusetts because, on June 20, 2011, the plaintiff filed a Motion for Summary Judgment with exhibits indicating he had a new

---

[1]   In the Amended Complaint, this defendant is listed as Ann Marie.  The defendants and the plaintiff have since identified defendant Ann Marie as Ann Marie Deeb.  Thus, the court will refer to her as Ann Marie Deeb in this ruling.

address and that he had been released from prison. [Dkt. 42-1, p. 1].  The defendants' Cross-Motion for Summary Judgment was mailed to this address and not returned to the court as undeliverable and on August 24, 2011, the plaintiff filed a Motion for Extension of Time to respond to the Cross-Motion. [Dkt. #48].

Rule 83.1(c) of the Local Civil Rules of the United States District Court for the District of Connecticut requires a *pro se* party to provide the Court with a written notice indicating an address within Connecticut where he can be served with motions, pleadings and other court documents filed in his case.  In accordance with that rule, the Court granted the plaintiffs motion for extension of time, ordering him to respond to the defendant's Cross-Motion by December 8, 2011 and to file notice indicating his current mailing address within Connecticut. [Dkt. #49].

To date, the plaintiff has failed to file a response to the defendants' motion for summary judgment or to provide a written notice of his current address within the State of Connecticut.  Other than the motion for extension of time, the plaintiff has made no other attempts to contact the court.

Accordingly, the plaintiff has failed to comply with an order and rule of the court.  This case is subject to dismissal pursuant to Rule 41(b) of the Federal Rules of Civil Procedure.  In addition, the defendants have moved for summary judgment. For the reasons that follow, the motion will be granted.


I.    Standard of Review

In a motion for summary judgment, the burden is on the moving party to

2

establish that there are no genuine issues of material fact in dispute and that it is entitled to judgment as a matter of law.  *See* Rule 56(c),  Fed. R. Civ. P.; *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986).  The moving party may satisfy this burden by demonstrating the lack of evidence to support the nonmoving party's case.  *PepsiCo, Inc. v. Coca-Cola Co.*, 315 F.3d 101, 105 (2d Cir. 2002) (per curiam).

"Summary judgment is appropriate where, construing all evidence in the light most favorable to the non-moving party," *Pabon v. Wright*, 459 F.3d 241, 247 (2d Cir.2006), "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law," Fed. R. Civ. P. 56(c)(2).  An issue of fact is "material" if it "might affect the outcome of the suit under the governing law," and is "genuine" if "a reasonable jury could return a verdict for the nonmoving party" based on it.  *Anderson*, 477 U.S. at 248. "Unsupported allegations do not create a material issue of fact." *Weinstock v. Columbia Univ.*, 224 F.3d 33, 41 (2d Cir. 2000).   When a motion for summary judgment is supported by documentary evidence and sworn affidavits, the nonmoving party must do more than vaguely assert the existence of some unspecified disputed material facts or present mere speculation or conjecture.  *See Western World Ins. Co. v. Stack Oil, Inc.*, 922 F.2d 118, 121 (2d Cir. 1990) (quotations and citations omitted).  The mere of existence of a scintilla of evidence in support of the nonmoving party's position is insufficient; there must be evidence on which the jury could reasonably find for him.  *See Dawson v. County of Westchester*, 373 F.3d 265, 272 (2d Cir. 2004).

The court resolves all ambiguities and draws all permissible factual inferences in favor of the nonmoving party.  *See Patterson v. County of Oneida, NY*, 375 F.3d 206, 218 (2d Cir. 2004).  If there is any evidence in the record from which a reasonable inference could be drawn in favor of the opposing party on the issue on which summary judgment is sought, summary judgment is improper.  *See Security Ins. Co. of Hartford v. Old Dominion Freight Line Inc.*, 391 F.3d 77, 83 (2d Cir. 2004).

Where one party is proceeding *pro se*, the court reads the *pro se* party's papers liberally and interprets them to raise the strongest arguments suggested therein.  *See Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir. 1994).  Despite this liberal interpretation, however, an unsupported assertion cannot overcome a properly supported motion for summary judgment.  *Carey v. Crescenzi*, 923 F.2d 18, 21 (2d Cir. 1991).

II.     Facts[2]

---

[2]    The facts are taken from defendant's Local Rule 56(a)1 Statement along with the attached exhibits and affidavits.  (*See* Docs. Nos. 46-3 through 46-7.)  Local Rule 56(a)2 requires the party opposing summary judgment to submit a Local Rule 56(a)2 Statement which contains separately numbered paragraphs corresponding to the Local Rule 56(a)1 Statement and indicates whether the opposing party admits or denies the facts set forth by the moving party.  Each admission or denial must include a citation to an affidavit or other admissible evidence.  In addition, the opposing party must submit a list of disputed factual issues.  *See* D. Conn. L. Civ. R. 56(a)2 & 56(a)3.  With their motion for summary judgment, defendants filed a Notice to Pro Se Litigant [Doc. No. 46-8] informing plaintiff of his obligation to respond to the motion for summary judgment, the time limit for filing his response, and of the contents of a proper response.
Plaintiff has failed to respond to the motion for summary judgment.  Accordingly, defendants' facts are deemed admitted.  *See* D. Conn. L. Civ. R. 56(a)1 ("All material facts set forth in said statement will be deemed admitted

4

In September 2009, the plaintiff was arrested in Connecticut and charged with multiple criminal offenses.  On September 17, 2009, he was admitted to Bridgeport Correctional as a pretrial detainee.

Upon his admission to Bridgeport Correctional, a member of the medical staff performed an intake health screening of the plaintiff.  The screening report reflected that the plaintiff suffered from non-insulin dependent diabetes mellitus, hypertension, high cholesterol and two mental health disorders.  The report indicated that the plaintiff was taking three medications for his mental health conditions.

On September 18, 2009, Dr. James O'Halloran evaluated the plaintiff.  The plaintiff reported that he suffered from type 2 diabetes and hypertension, but that these conditions were controlled with weight loss and an increase in muscle mass. The plaintiff also reported that he had been diagnosed as suffering from Hepatitis C, but that the condition had been adequately treated with therapy.

Dr. O'Halloran ordered that the plaintiff's blood sugar levels be checked twice a day, one day a week, his blood pressure and pulse be taken monthly for twelve months and that he submit to blood tests every three months for one year.  Dr. O'Halloran also prescribed medication to treat the plaintiff's hypertension and mental health conditions, referred him for a mental health evaluation and ordered that he be placed on a diabetic diet for a year.  Dr. O'Halloran directed the medical

---

unless controverted by the statement required to be served by the opposing party in accordance with Rule 56(a)2.").

staff to request copies of the plaintiff's medical records from the prison facility in Massachusetts where the plaintiff had been previously incarcerated.

On October 1, 2009, blood work revealed the plaintiff's cholesterol to be in the borderline high range.  Dr. Buchanan opined that these results were unremarkable. By April 2010, the plaintiff's total cholesterol level had improved and was within the desirable range.

Medical personnel at Bridgeport Correctional Center monitored the plaintiff's blood pressure, pulse and weight from September 21, 2009 through December 15, 2009.  The results of these tests were within the acceptable range.   Medical staff also took the plaintiff's blood sugar levels.  The levels were unremarkable except for an elevated reading on December 9, 2009.   In response to this elevated reading, a physician prescribed insulin to be given to the plaintiff.   In addition, the medical staff provided instruction on diabetes and its treatment to the plaintiff.

Later that day, Dr. Elderkin examined the plaintiff.  During that examination, the plaintiff related that prior to his incarceration in Connecticut, he had been previously prescribed Glyburide to treat his diabetes.  Dr. Elderkin prescribed Glyburide and issued instructions to the medical staff to monitor the plaintiff's diabetes by performing regular blood sugar tests.  Dr. Elderkin also discontinued the medication Dr. O'Halloran had previously prescribed to treat the plaintiff's mental health and hypertension conditions and prescribed two new medications.

On December 14, 2009, the plaintiff's blood sugar levels were elevated.  In response, a physician increased the dosage of Glyburide.  During the last week of

6

December 2009, a psychiatrist prescribed a new medication to treat the plaintiff's mental health conditions.

On February 2, 2010, a judge in the Connecticut Superior Court for the Judicial District of Bridgeport sentenced the plaintiff to thirteen months of imprisonment.  On February 10, 2010, prison officials at Bridgeport Correctional transferred the plaintiff to MacDougall Correctional Institution ("MacDougall").

Medical personnel at MacDougall continued to treat and monitor the plaintiff's various medical and mental health conditions.  In late February 2010, a physician prescribed another medication to treat the plaintiff's mental health conditions.  The plaintiff's medical records reflect that the plaintiff received extensive instruction regarding his diabetes condition and that subsequent testing revealed that the plaintiff's blood sugar levels were within the normal range by September 2010.

Although blood test results in April 2010 revealed the plaintiff's liver enzymes to be high, these elevations were minor and did not indicate evidence of kidney damage.  Dr. Buchanan opined that the elevated liver enzymes could have been attributed to inflammation or a side effect of the plaintiff's cholesterol medication.

On May 17, 2010, a physician at MacDougall ordered the plaintiff to be put on a low cholesterol/low fat diet and a diabetic diet.  In early September 2010, the plaintiff's total cholesterol was within the desirable range.  The plaintiff's blood pressure, pulse and weight remained within acceptable limits for the period from June 2010 to October 2010.  Dr. Buchanan opined that the plaintiff's test results through October 2010 demonstrated that the plaintiff had been provided with

7

appropriate medical treatment after his transfer to MacDougall.

On October 13, 2010, prison officials at MacDougall transferred the plaintiff to Hartford Correctional Center.  On October 14, 2010, the plaintiff completed his Connecticut sentence and was discharged from the custody of the Connecticut Department of Correction ("CDOC").   That same day, however, the plaintiff was re-admitted to CDOC pursuant to a warrant for his arrest for violating a sentence of probation imposed by a court in Massachusetts.  On October 14, 2010, the plaintiff waived extradition to Massachusetts.  He remained in CDOC custody until November 12, 2010, when he was extradited to Massachusetts.

III.   **Discussion**

The plaintiff contends that the defendants were deliberately indifferent to his diabetes, high blood pressure and high cholesterol conditions.  The defendants argue that they were not deliberately indifferent to his medical needs, the plaintiff had not properly exhausted administrative remedies as to his claims and the plaintiff failed to allege the personal involvement of defendants Bannish, Deeb, Ford, Hein and Lightner in the alleged deliberate indifference to his medical needs.

A.   **Personal Involvement**

The plaintiff names Daniel Bannish as a defendant.  The defendants argue that the plaintiff has failed to allege the personal involvement of Daniel Bannish in the alleged deliberate indifference to his medical needs.

8

To recover money damages under section 1983, plaintiff must show that these defendants were personally involved in the constitutional violations. *See Colon v. Coughlin*, 58 F.3d 865, 873 (2d Cir. 1995). As a supervisory official, Daniel Bannish cannot be held liable under section 1983 solely for the acts of his subordinates. *See Ayers v. Coughlin*, 780 F.2d 205, 210 (2d Cir. 1985).

The plaintiff may show supervisory liability by demonstrating one or more of the following criteria: (1) the defendant actually and directly participated in the alleged unconstitutional acts; (2) the defendant failed to remedy a wrong after being informed of the wrong through a report or appeal; (3) the defendant created or approved a policy or custom that sanctioned objectionable conduct which rose to the level of a constitutional violation or allowed such a policy or custom to continue; (4) the defendant was grossly negligent in supervising the correctional officers who committed the constitutional violation; and (5) the defendant failed to take action in response to information regarding the occurrence of unconstitutional conduct. *See Colon v. Coughlin*, 58 F.3d 865, 873 (2d Cir. 1995) (citation omitted). In addition, plaintiff must demonstrate an affirmative causal link between the inaction of the supervisory official and his injury. *See Poe v. Leonard*, 282 F.3d 123, 140 (2d Cir. 2002).

In *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937 (2009), the Supreme Court found that a supervisor can be held liable only "through the official's own individual actions." *Id.* at ___, 129 S. Ct. at 1948. This decision arguably casts doubt on the continued viability of some of the categories for supervisory liability. The Second

9

Circuit, however, has not revisited the criteria for supervisory liability following *Iqbal*. *See DeJesus v. Albright*, No. 08 Civ. 5804 (DLC), 2011 WL 814838, at *6 n. 4 (S.D.N.Y. Mar. 9, 2011).  Because it is unclear as to whether *Iqbal* overrules or limits *Colon* the court will continue to apply the categories for supervisory liability set forth in *Colon*.

The plaintiff describes Daniel Banish as a Medical Services Administrator for the University of Connecticut Correctional Managed Health Care.  (*See* Amended Compl. at 1, 3.)  The plaintiff does not otherwise refer to or mention Daniel Bannish by name in the remaining pages of the Amended Complaint.  It is evident that the plaintiff has named Daniel Bannish as a defendant solely because he is a medical supervisor.   The only relief sought by the plaintiff is monetary damages.

There are no facts to suggest that Daniel Bannish was directly involved in the alleged deliberate indifference to the plaintiff's medical conditions.  In addition, the plaintiff has not alleged  that Administrator Bannish became aware of the alleged deliberate indifference to his medical needs through a report or appeal or request and failed to take any action to remedy the inadequate medical care or that he failed to in response to information regarding an occurrence of unconstitutional conduct. Furthermore, there are no allegations or evidence that Daniel Bannish was negligent in supervising the medical staff who allegedly treated the plaintiff or that he created an unconstitutional policy or custom relating to the plaintiff's medical care.   Thus, the plaintiff has not alleged or provided evidence to demonstrate the personal involvement of Administrator Bannish in the alleged deliberate indifference to his

medical conditions.  The motion for summary judgment is granted as to all claims of deliberate indifference to medical needs against defendant Bannish.

B.     Deliberate Indifference to Medical Needs

The plaintiff argues that he suffered from diabetes, high blood pressure and high cholesterol when he arrived at Bridgeport Correctional and that the defendants were deliberately indifferent to these medical conditions.   Defendants James O'Halloran, Rikel Lightner, Ann Marie Deeb, Nathan Hein and Walter Ford contend that they provided the plaintiff with adequate medical treatment for his various medical and mental health conditions.  Thus, they claim that the plaintiff has failed to state an Eighth Amendment claim of deliberate indifference to serious medical needs.

At the time of the events set forth in the Amended Complaint, the plaintiff was a pretrial detainee.  Because "[a] person lawfully committed to pretrial detention has not been adjudged guilty of any crime," the Due Process clause of the Fourteenth Amendment dictates that he or she may not be punished in any manner-neither cruelly and unusually nor otherwise.  *Bell v. Wolfish*, 441 U.S. 520, 536-37 (1979).

The Supreme Court has held that although the Eighth Amendment's protections of prisoners from cruel and unusual punishment due to the "deliberate indifference to [their] serious medical needs" do not specifically apply to pretrial detainees, the protections afforded pretrial detainees under the Due Process Clause "are at least as great as the Eighth Amendment protections available to a convicted

11

prisoner."  *See City of Revere v. Massachusetts General Hospital*, 463 U.S. 239, 243-44 (1983) (citations omitted).   In Cuocco v. Moritsugu, 222 F.3d 99 (2d Cir. 2000), the Second Circuit noted that "[w]e have often applied the Eighth Amendment deliberate indifference test to pre-trial detainees bringing actions under the Due Process Clause of the Fourteenth Amendment."  Id. at 106 (citing Weyant v. Okst, 101 F.3d 845, 856 (2d Cir. 1996)).  Thus, the court will analyze the plaintiff's Fourteenth Amendment Due Process claims of deliberate indifference to the serious medical needs under the Eighth Amendment deliberate indifference standard applicable to convicted prisoners.

To prevail on a claim of deliberate indifference to medical needs, a plaintiff must provide evidence of sufficiently harmful acts or omissions and intent to either deny or unreasonably delay access to needed medical care or the wanton infliction of unnecessary pain by prison personnel.  *See Estelle v. Gamble*, 429 U.S. 97, 104-06 (1976).  Mere negligence will not support a section 1983 claim; "the Eighth Amendment is not a vehicle for bringing medical malpractice claims, nor a substitute for state tort law."  *Smith v. Carpenter*, 316 F.3d 178, 184 (2d Cir. 2003).  Thus, "not every lapse in prison medical care will rise to the level of a constitutional violation," *id.*; rather, the conduct complained of must "shock the conscience" or constitute a "barbarous act."  *McCloud v. Delaney*, 677 F. Supp. 230, 232 (S.D.N.Y. 1988) (citing *United States ex rel. Hyde v. McGinnis*, 429 F.2d 864 (2d Cir. 1970)).

There are both subjective and objective components to the deliberate indifference standard.  *See Hathaway v. Coughlin*, 37 F.3d 63, 66 (2d Cir. 1994), *cert.*

12

*denied sub nom. Foote v. Hathaway*, 513 U.S. 1154 (1995).  Objectively, the alleged deprivation must be "sufficiently serious."  *Wilson v. Seiter*, 501 U.S. 294, 298 (1991).  The condition must produce death, degeneration or extreme pain.  *See Hathaway v. Coughlin*, 99 F.3d 550, 553 (2d Cir. 1996).  Subjectively, the defendant must have been actually aware of a substantial risk that the inmate would suffer serious harm as a result of his actions or inactions.  *See Salahuddin v. Goord*, 467 F.3d 263, 279-80 (2d Cir. 2006).  Thus, the fact that a prison official did not alleviate a significant risk that he should have but did not perceive does not constitute deliberate indifference.  *See  Farmer v. Brennan*, 511 U.S. 825, 834, 838 (1994).

The Second Circuit has identified several factors that are highly relevant to the inquiry into the seriousness of a medical condition.  For example, a medical condition significantly affecting the inmate's daily activities or causing chronic and significant pain or the existence of an injury a reasonable doctor would find important constitutes a serious medical need.  *See Chance*, 143 F.3d at 702.  In addition, where the denial of treatment causes plaintiff to suffer a permanent loss or life-long handicap, the medical need is considered serious.  *See Harrison v. Barkley*, 219 F.3d 132, 136 (2d Cir. 2000).

With regard to the second prong of Deliberate indifference requires the prisoner "to prove that the prison official knew of and disregarded the prisoner's serious medical needs."  *Chance*, 143 F.3d at 702.  Thus, prison officials must be "intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed."  *Estelle*, 429 U.S. at  104.  A difference of

opinion between a prisoner and prison officials regarding medical treatment does not, as a matter of law, constitute deliberate indifference. *Chance*, 143 F.3d at 703. "Nor does the fact that an inmate feels that he did not get the level of medical attention he deserved, or that he might prefer an alternative treatment, support a constitutional claim." *Sonds v. St. Barnabas Hosp. Correctional Health Services*, 151 F. Supp. 2d 303, 311 (S.D.N.Y. 2001) (citing *Dean v. Coughlin*, 804 F.2d 207, 215 (2d Cir.1986)).

The defendants do not contest the fact that the plaintiff's high blood pressure, diabetes and high cholesterol were serious medical conditions.  They argue, however, that even though the plaintiff suffered from serious medical needs, they were not deliberately indifferent to those needs.  The plaintiff alleges that the inadequate medical treatment provided by the defendants caused him to suffer injuries to his eyes, liver, kidneys, peripheral blood vessels and nerves.

It is undisputed that the plaintiff arrived at Bridgeport Correctional on September 17, 2009 and that prison officials transferred him to MacDougall on February 4, 2010.  Defendants O'Halloran, Lightner, Deeb, Hein and Ford were all employed at Bridgeport Correctional during the time period from September 17, 2009 to February 4, 2010.

The plaintiff's medical records reflect that upon his admission to Bridgeport Correctional on September 17, 2009, a medical staff member completed a medical and mental health screening form for the plaintiff.  In response to questions from the medical staff member, the plaintiff indicated that he suffered from two mental

14

health conditions as well as three medical conditions.  Those medical conditions were: hypertension, high cholesterol and diabetes.  A notation on the form reflects that the plaintiff had been prescribed three specific medications for the his mental health disorders and unspecified medications for his hypertension, high cholesterol and diabetes.   The medical staff member recommended that the plaintiff be seen by medical and mental health professionals in the future.  (*See* Defs.' Rule 56(a)1 Statement, Attachment D, Ex. 1.)

The Affidavit of Dr. Mark Buchanan and the plaintiff's medical records reflect that during the time period from September 17, 2009 through February 10, 2010, various medical and mental health providers at Bridgeport Correctional, including Dr. O'Halloran, examined and treated the plaintiff for his mental health conditions and his hypertension/high blood pressure, high cholesterol and diabetes conditions.  Medical staff requested, received and reviewed the plaintiff's medical records from prior prison facilities as well as a prior mental health provider in order to properly treat the plaintiff's medical and mental health conditions.  The medical providers at Bridgeport Correctional including Dr. O'Halloran prescribed medication for the plaintiff's medical and mental health conditions, issued orders that the plaintiff's medical conditions be monitored closely and placed the plaintiff on medically indicated diets in an effort to treat and reverse the plaintiff's medical conditions.  (*See id.*)

The plaintiff's medical records, test results and medication administration sheets reflect that the medical and mental health staff at Bridgeport Correctional

thoroughly evaluated and examined the plaintiff on a regular basis, referred the plaintiff for appropriate testing and monitored and treated the plaintiff's medical and mental health conditions with medication as well as with medically indicated diets. When a test result or plaintiff's symptoms or complaints reflected that the plaintiff's current medication or treatment was not working adequately, medical staff responded appropriately by making changes to the dosage of the medication, discontinuing the medication or treatment, adding another medication or applying a different form of treatment.   The medical records reveal that treatment for the plaintiff's medical and mental health conditions continued after he was transferred to MacDougall.   (*See id.*)

        Although the plaintiff alleged in his Amended Complaint that the medical treatment or lack of medical treatment provided by the defendants caused him to suffer injuries to his eyes, liver, kidneys, peripheral blood vessels and nerves, he has neglected to submit any evidence to corroborate these allegations.  Moreover, there is no information in the plaintiff's medical records or test results to suggest that the plaintiff suffered any of these types of injuries.  Because the plaintiff has failed to offer any evidence to contradict the medical records, test results and Affidavit of Dr. Buchanan regarding his treatment at Bridgeport Correction from September 2009 to February 2010, he has not demonstrated that defendants James O'Halloran, Rikel Lightner, Ann Marie Deeb, Nathan Hein and Walter Ford were deliberately indifferent to his serious medical needs.  The court concludes that there are no issues of material fact in dispute regarding the appropriate and

comprehensive medical treatment provided by the defendants and they are entitled to judgment as a matter of law.  The motion for summary judgment is granted on the ground that defendants  O'Halloran, Lightner, Deeb, Hein and Ford were not deliberately indifferent to the plaintiff's serious medical needs.


IV.    <u>Conclusion</u>

The Defendants' Motion for Summary Judgment [Doc. No. 46] is GRANTED. The Clerk is directed to enter judgment for the defendants and close this case.


SO ORDERED this 28th day of March 2012, at Hartford, Connecticut.


_____<u>/s/</u>_____
Vanessa L. Bryant
United States District Judge

17